Tri-City Ry. Co. v. Killeen.

## Tri-City Ry. Co. v. William Killeen.

1. INSTRUCTIONS—*When to be Accurate, etc.*—Where the question as to whether an electric railway company has been guilty of negligence is a close one upon the facts, the instructions from the court as to the law governing the case should be accurate.

2. ORDINARY CARE—*No Recovery in the Absence of.*—Where it appears from the evidence, in an action for personal injuries, that the person injured was not at the time in the exercise of due care for his personal safety, there can be no recovery.

3. SAME—*What is Not an Exercise of Ordinary Care.*—Where a person about to engage in taking down electric wires is warned by his employer of the danger, and cautioned to be careful, but disregards the warning and is injured in consequence, he can not be regarded as being in the exercise of due care for his own safety.

Trespass on the Case, for injuries from a "live wire." Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST,

Judge, presiding.  Heard in this court at the April term, 1900.  Reversed and remanded.  Opinion filed October 11, 1900.

JACKSON & HURST, attorneys for appellant.

J. T. KENWORTHY and S. R. KENWORTHY, attorneys for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by appellee against appellant for damages on account of injuries alleged to have been sustained by him through the negligence of the latter, in failing to properly insulate certain wires used by it in the operation of a street railway.

It appeared from the evidence that on June 24, 1897, appellant was operating a street railway along certain of the public streets of Rock Island, electricity being the motive power used to propel the cars; that the electricity was applied to the cars from trolley wires suspended above the tracks; that these trolley wires were held in place by cross or span wires attached by eyebolts to poles placed in the street at the curb stone.    The trolley wire was attached to the cross wire by what was known as the "hanger." The center of the hanger was an iron bolt, to which was attached the device for supporting the trolley wire.    Around this bolt was a moulded mica insulator and on the outside of the insulator was a cast iron clip to which the span wire was attached.    Along the street where the accident occurred the Central Union Telephone Company had its wires stretched on its own poles, about in line with the poles of appellant, its wires being from ten to twenty feet above appellant's span wires.    Desiring to make some change in its lines, the telephone company determined to remove its wires along the street in question, and accordingly, on the day of the accident, sent three of its employes, one of whom was appellee, to do this work.    Two of these men, Smiley and Johns, cut the wires and threw them down, while it was the duty of appellee, who was what is known as a "ground

man," to roll up the wires as they were cut down, so that they could be thrown into a wagon and taken away. During the progress of the work the men on the poles let certain of the wires, when detached, fall either upon one of the span wires above described, or upon the eyebolt to which it was attached. While the telephone wires were still in contact with the eyebolt or span wire, appellee took hold of one of them to pull it down, when he received a severe electric shock, which caused the injuries complained of. The electricity which caused the shock had passed from the trolley wire onto the span wire, thence to the telephone wire, and when appellee caught hold of the telephone wire, the circuit was completed and ' the shock resulted. It appeared that a week prior to the accident the insulator in question was tested and found to be all right, but after the accident a hole was found burned in the side of it. The bolt in the center was also burned in a place corresponding with the hole in the insulator. The jury returned a verdict in favor of appellee for $2,500. A motion for a new trial was overruled, judgment entered upon the verdict and an appeal taken to this court.

Appellant insists that the verdict was against the weight of the evidence for the reason that it did not satisfactorily appear from the proofs that appellant was guilty of any negligence or that appellee was at the time of the accident, in the exercise of ordinary care for his own safety. Appellee, on the contrary, insists that the direct and proximate cause of the injury to him was the negligent omission of the defendant to properly insulate its trolley and span wires. Evidence was introduced on the part of appellant tending to show that the system of construction and insulation used by it was a standard, safe and proper method and that the insulation used was the best known; also that if there was any defect in the insulation in question, it was of recent origin and could not be detected by one looking at it from below. On the other hand it was claimed by appellee that there were other systems of construction and insulation which were more perfect than that used by appellant and

that if there was any defect in the insulator in question, it should have been detected and remedied by appellant at once.

The question as to whether appellant was negligent or not was a close one upon the facts, calling for accurate instructions from the court as to the law governing the case. Instruction number three offered by appellant and refused by the court was as follows:

" The court further instructs the jury that if they believe from the evidence that the span wire of defendant's electric railway through which plaintiff claims he received the electric shock, was insulated immediately before the time of the alleged injury and that such insulation was the usual and ordinary plan of insulation and was a safe method of insulation to protect the public from injury, in such case the insulation of defendant's span wire was lawful, and in that respect defendant had performed its duty to the public, including the plaintiff; and if, notwithstanding such insulation, plaintiff received an electric shock through the span wire without any negligence on defendant's part appearing by the evidence, the plaintiff can not recover in this suit, and the verdict must be for the defendant."

One of the theories of the defense was that the insulator was intact up to the time appellee took hold of the telephone wire and that his action in so doing completed the circuit and resulted in forcing a current to break its way through the insulator. There was also proof tending to show that the insulation was the usual and ordinary plan of insulation. Under such circumstances we think the instruction was proper and should have been given and the court erred in refusing it.

It appeared from the proofs that appellee himself was not free from negligence contributing to the accident. Three witnesses, Huston, the foreman, Johns and Smiley, all swore that on the morning of the day of the accident, at the time appellee and his companions were sent to work, Huston warned them of the danger and told them to be careful and not to let the wires they were taking down come in contact with the electric wire or they would get burned; Smiley also testified that he told appellee not to touch any

of the telephone wires at all until he saw that they were on the ground. Appellee denies these statements but we find no reason, growing out of the evidence, why his statement should be taken as against the testimony of the three witnesses. Notwithstanding the warning received by him, Killeen testified that when he took hold of the wire he saw it was hanging on the span wire right close to the pole. He did not come in contact with the wire accidentally or of necessity. Under such circumstances we can not say that appellee was at the time in the exercise of due care for his own safety. It appears from a clear preponderance of the evidence in this record that he either forgot or disregarded the cautions given him and as a result of his negligence met with the accident in question.

For the reasons above set forth the judgment of the court below in this case will be reversed and the cause remanded for another trial.